**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| CHRIS STEVENSON; MARION DAHN; | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:13-cv-02105-N |
| | ) | |
| LASALLE CORRECTIONS TRANSPORT, LLC; | ) | |
| SOUTHWESTERN CORRECTIONAL, L.L.C.; | ) | |
| | ) | |
| Defendants. | ) | |

---

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW**

---

Plaintiffs respectfully submit their following Brief in Opposition to Defendant's Renewed

Motion for Judgment as Matter of Law that they filed on November 5, 2014 (Doc. 71) and

renewed after the jury verdict on November 6, 2014. Since the Jury Verdict found liability for

and awarded Plaintiffs' Damages for age discrimination (hostile work environment) as to Marion

Dahn and Retaliation under Title VII as to Chris Stevenson, Plaintiffs will address only those

causes of action: (1) Age Discrimination under the ADEA (For Plaintiff Marion Dahn); and (2)

Retaliation under Title VII (for Plaintiff Chris Stevenson only).

## I.   SUMMARY OF THE ARGUMENT

The primary issues before the Court are:

1. Whether a reasonable jury could find that Plaintiff Dahn was subjected to a hostile

   work environment based on his age;

*Plaintiffs' Brief in Opposition*                    1

2. Whether a reasonable jury could find that Plaintiff Stevenson was subjected to adverse employment actions, including but not limited to termination, by Defendant because he engaged in protected activity;

3. Whether Plaintiff Dahn failed to exhaust his administrative remedies for his ADEA claim; and

4. Whether Plaintiff Stevenson failed to exhaust his administrative remedies for his Title VII retaliation claims.

Because the jury had ample evidence supporting their decision to reject Defendant's justifications for the adverse treatment of Plaintiffs and find age discrimination in a hostile work environment and unlawful retaliation, the Plaintiffs request that the Court deny Defendant's motion and enter a final judgment for Plaintiffs in accordance with the jury's verdict, including all awarded damages.

## II.    NATURE AND STAGE OF PROCEEDING

Trial commenced on November 3, 2014, with respect to Plaintiffs' claims as detailed in Plaintiffs' Trial Brief (Doc. 67). At the conclusion of trial, the jury found that: (1) Defendant willfully created a hostile work environment against Plaintiff Dahn based on his age, thus violating the ADEA; (2) Plaintiff Stevenson engaged in activity that was protected by Title VII and that Defendant willfully subjected Plaintiff Stevenson to adverse employment actions because he engaged in such protected activity; and (3) Defendant's conduct rose to such a level of deceit, cover-up, etc. that punitive damages should be and were awarded. The jury awarded $222,846.00 to Dahn to fairly and reasonably compensate him for the damages caused by the Defendant.  The jury awarded $572,475.00 to Stevenson to fairly and reasonably compensate him for the damages caused by Defendant, including punitive damages.

As shown below, the jury's findings are fully supported by the evidence offered at trial. Accordingly, the Plaintiffs respectfully request that the Court deny Defendant's motion and enter final judgment for the Plaintiffs in accordance with the jury's verdict and for such equitable relief deemed appropriate by the Court.

## III.    APPLICABLE LEGAL STANDARDS

The challenge raised by a motion for judgment as a matter of law following a jury trial must be to the legal sufficiency of the evidence supporting the jury's verdict. *Thomas v. Texas Department of Criminal Justice*, 220 F.3d 389, 392 (5th Cir. 2000). Because great deference is accorded to the jury's verdict, the sufficiency of the evidence is evaluated viewing all evidence, all credibility determinations and all reasonable inferences in the light most favorable to the verdict. *Thomas*, 389 F. 3d at 392; *Mississippi Chemical Corporation v. Dresser-Rand Company*, 287 F.3d 359, 365 (5th Cir. 2002). If reasonable persons could differ in their interpretations of the evidence, the motion should be denied. *Thomas*, 389 F.3d at 392 *citing Baltazar v. Holmes*, 162 F.3d 368, 373 (5th Cir. 1998). Applied here, the evidence in the record is, at a minimum, legally sufficient to allow a reasonable jury to find in the Plaintiffs' favor.

Also, since the *Reeves* decision, the Fifth Circuit has applied heightened scrutiny to summary judgments for employers and to their FRCP 50 motions for judgment as a matter of law in employment cases. *See, e.g., Laxton v. GAP, Inc.*, 333 F.3d 572 (5th Cir. 2003) (reversing judgment as matter of law for employer); *Fabela v. Socorro Independent School District*, 329 F.3d 409 (5th Cir. 2003) (reversing summary judgment for employer); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219 (5th Cir. 2000) (reversing judgment as a matter of law for employer). In so doing, the Fifth Circuit has made clear: "[I]t is well-settled that at the summary judgment stage of the litigation the function of the trial bench...is not to step into the stead of the

jury and weigh the evidence in the search for truth, but is instead to determine whether there exists a genuine issue for trial." *Fabela*, 329 F.3d at 414 (5th Cir. 2003). The Fifth Circuit has also emphasized that, where the issue in an employment discrimination case is the employer's motivation for the allegedly discriminatory act, that issue must be decided by a jury. *Russell*, 235 F.3d at 225, *citing Fowler v. Carrolton Pub. Library*, 799 F.2d 976, 984 (5th Cir. 1986).

## IV.   EVIDENTIARY FACTS

### A.   Plaintiff Marion Dahn Testified to the Following at Trial

1.     Marion Dahn began working for Southwestern Correctional on June 1, 2010.

2.     Approximately mid-June, Lt. Milsap started calling Dahn names including: (1) old fart; (2) old man; (3) pops; and (4) Lt. Dan (referring to the crippled, old war veteran without feeling below his waist in the movie Forrest Gump).  Lt. Milsap did the name calling *in front* of other employees, deputies, inmates and detainees. (Also Jim Sloan testimony).

3.     Starting end of June 2010 through termination, Dahn was denied overtime work when younger employees under the age of 40 years old were given the same overtime work. For example, numerous times a month, Dahn was sent home from the courts when he asked to stay and work overtime and younger employees were allowed to stay and work that overtime instead.

4.     Approximately mid-July, Warden Janicek started calling Dahn "Lt. Dan" (referring to the crippled, old war veteran without feeling below his waist in the movie Forrest Gump).

5.     Then, approximately mid-July 2010, Dahn asked Milsap and Janicek to stop calling him derogatory names regarding his age.

6.     The name calling continued - approximately August 2010, Dahn complained to Major Kelsey, a Southwestern employee and his supervisor, that he needed Milsap and Warden to stop calling him the derogatory names because other deputies were starting to call him derogatory age

related names because they thought it was ok, and the inmates were showing him less respect and listening to him less, and therefore making it harder to do his job. Major Kelsey never investigated Marion's complaints and never offered to help him.

7.      Approximately October 2010, Dahn applied with Major Kelsey to be a Field Training Officer, brought in requested TECLOS paperwork.  Major Kelsey denied him the promotion.

8.      On January 3, 2011, Laura Standafor complained to Plaintiffs Stevenson and Dahn that Milsap was showing her pornography on his computer, locking him in his office with him and further sexual harassment and she did not know what to do. Dahn and Stevenson told Corporal Sheila O'Dell about it and she did not know what to do.  Dahn and Stevenson then complained to Lt. Jones for Standafor, all on approximately January 4th.  On or about the end of January 2011, Dahn and Stevenson complain to Warden Janicek that Milsap was harassing Standafor and nothing was being done.

9.      Approximately February 2011, O'Dell, who was much less experienced, with fewer training credentials, and younger than 40 years old, was promoted to position of Field Training Officer, and thereby given a pay raise.

10.      Dahn was scheduled to be on call at least once a week and often twice a week and more than younger employees were forced to be on call.  Dahn was never compensated for being on-call. (Exhibit 2).

11.      On or about 2011, Dahn was forced to work a solid 26-hour shift at the hospital because his supervisors forgot he was there and then Milsap tried to force Marion to change his time cards to reflect only a 12 hour shift.

12.      After Dahn complained to Milsap about being subjected to the derogatory name calling and treated differently than younger employees, Milsap asked Rebecca Campbell to take pictures

*Plaintiffs' Brief in Opposition*                    5

of Dahn sleeping. (Rebecca Campbell's testimony; Exhibit 15).

13.     On April 4, 2012, LaSalle terminated Dahn with a less than honorable discharge for allegedly giving an inmate his telephone number. Dahn never gave any inmate his telephone number and the issue was never investigated.

14.     Plaintiff Marion Dahn first contacted the EEOC on April 27, 2012, and filed an initial complaint with the EEOC on May 1, 2012. (Exhibits 17, 18, and 22).

15.     Lt. Milsap ordered Dahn to change his work times approximately 3 to 6 times a month because, although Dahn worked a lot of overtime, Lt. Milsap did not want Dahn's overtime reflected on the books.

16.     When Dahn was on-call, then he had to answer his phone or he would be terminated and he had to go into work within 1 hour regardless of his schedules or he would be terminated. Due to the on call restrictions, Dahn was unable to: rest at home, go out to social events, restaurants, and Grocery shopping, eat at a restaurant, sleep, or engage in any other personal recreational activity.

### B.      Plaintiff Chris Stevenson Testified to the Following at Trial

1.     Chris Stevenson began working for Southwestern Correctional on June 1, 2010.

2.     Approximately July 2010, Milsap starting forcing Stevenson to not record all of his work time to reduce overtime and that he work off the clock on his long work shift.

3.     Approximately August 2010, Stevenson complained to Milsap that he was being forced to work off the clock and was not getting paid all of his overtime.

4.     Approximately September 2010, Stevenson was pulled off all ICE duties for around a month, causing a reduction in his pay.

5.     Approximately October 2010, Stevenson was put back on his normal ICE duties.

*Plaintiffs' Brief in Opposition*                    **6**

6.      On January 3, 2011, Laura Standafor complained to Plaintiffs Stevenson and Dahn that Milsap was showing her pornography on his computer, locking her in his office with him and further sexual harassment and she did not know what to do. Dahn and Stevenson told Corporal Sheila O'Dell about it and she did not know what to do.  Dahn and Stevenson then complained to Lt. Jones for Standafor, all on approximately January 4th.  Later on approximately January 4, 2011, Stevenson saw Standafor leaving Milsap's office crying.  (Exhibits 3, 41).

7.      On or about the end of January 2011, Dahn and Stevenson complain to Warden Janicek that Milsap was harassing Standafor and nothing was being done.

8.      Approximately February 2011, Milsap took Stevenson off all ICE duties, thus reducing his pay again.

9.      Approximately February 2011, Milsap asked Johnson County Deputy and Southwestern employee James Sloan, to ticket Stevenson for his registration tag allegedly being expired on his personal vehicle while Stevenson was at work.  Sloan refused.  (Jim Sloan testimony.)

10.     Starting approximately February 2011, Milsap denied overtime shifts for Stevenson more than other similarly situated employees.

11.     Starting February 2011, after Stevenson complained to O'Dell, Janicek and Jones about the harassment of Standafor, he was forced to be on call even more than usual and so that he effectively had only 1 or 2 days off in a whole month.

12.     Approximately April 14, 2011, Warden Janicek informed Stevenson that he was under investigation by the Defendant Southwestern for harassment.  (Exhibit 41).

13.     Approximately May 2011, Stevenson asked Warden Janicek about the status of the investigation because Stevenson wanted his name cleared and his employment to be secure. Warden Janicek replied that Stevenson's supervisor was handling the investigation, and he still

*Plaintiffs' Brief in Opposition*                     7

would not talk to Stevenson about it.

14.     Approximately June 2011, Stevenson asked Warden Janicek's supervisor, Chris Bell, about the status of the alleged investigation into Stevenson. Bell replied that he was unaware of any investigation involving Stevenson. Stevenson even offered to present a copy of his phone records to prove his innocence of any wrongdoing. Bell informed Stevenson not to produce telephone records because the EEOC could get involved and Stevenson replied that he definitely wanted the EEOC involve.   Stevenson was never informed about the resolution of the investigation.

15.     On June 9, 2011, Stevenson was reprimand for substandard work performance (for being late because his wife had a major surgery).

16.     On October 12, 2011, Stevenson was reprimanded for allegedly failing to buckle an inmate's seatbelt, per Milsap's instructions.  (Exhibit 35).

17.     Near the end of 2011, Wilkerson left her loaded, unsecured, firearm in a bathroom at the hospital while working as David Edward's partner.  Wilkerson was not terminated for doing so, and months later she was partnered with Plaintiff Stevenson.  (Also David Edward's testimony).

18.     Approximately end of March 2012, Milsap told Stevenson he could have his ICE duties back but ONLY if Wilkerson was his partner and he understood that Wilkerson was his superior and he had to do exactly what Wilkerson said.

> (1)approximately 2 weeks later, on April 18, 2012, Wilkerson confused an inmate and it was a big deal but Stevenson was not terminated. (Exhibits 33 & 34).
>
> (2)Immediately after, Stevenson asked Milsap to partner him with someone else because Wilkerson was incompetent and had just informed Stevenson that she had suicidal thoughts often.
>
> (3)Milsap refused to let Stevenson change partners.

(4)On May 10, 2012, only approximately 1.5 month after being put back on ICE transport and duties, Wilkerson confused another inmate and she and Stevenson were fired. (Exhibit 6).

19.    Stevenson was terminated on May 14, 2012, after Stevenson: (1) lodged complaints about Standafor being sexually harassed; (2) complained about Dahn being called derogatory age related names; (3) complained about being forced to work off the clock; and (4) complaining about being forced to be on-call more than younger employees.  (Exhibits 3, 7, & 10).

20.    Plaintiff Chris Stevenson first contacted and filed an initial complaint with the EEOC on November 6, 2012.  (Exhibits 9-12).

21.    When Stevenson was on-call, then he had to answer his phone and get to work within 1 hour or he would be terminated. Due to the on call restrictions, Stevenson was unable to: rest at home, go out to social events, restaurants, and Grocery shopping, eat at a restaurant, sleep, or engage in any other personal recreational activity.

22.    Rebecca Campbell, Defendant's witness, testified that she liked working with Stevenson because he was a hard-worker and honest. (Rebecca Campbell testimony).

## V.    ARGUMENT AND AUTHORITIES

### A.    The Evidence At Trial Supports The Jury's Verdict

A reasonable jury presented with the evidence admitted during the trial could, and did, conclude and that Defendant subjected Marion Dahn to a hostile work environment because of his age, and that Defendant committed adverse employment actions against Stevenson because he engaged in protected activity. Simply put, there is sufficient evidence in the record to support Dahn's claims.

### B.    Age Discrimination via Hostile Work Environment Under the ADEA

Generally, for an ADEA hostile work environment claim, a plaintiff must show (1) he

was over the age of 40; (2) the employee was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer." *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011).

Although the Supreme Court held in *Gross* that the proper causation standard for ADEA disparate treatment claims is causation in fact, the Fifth Circuit has distinguished disparate treatment claims and hostile work environment claims under ADEA. The Fifth Circuit, in *Reed v. Neopost USA, Inc.*, did not apply the causation in fact standard to an ADEA hostile work environment claim. *Gross*, 557 U.S. at 180; Reed, 701 F.3d 434, 442-43 (5th Cir. 2012). While hostile work environment claims under ADEA and Title VII are derived from the statutes, they are essentially common law constructions. Therefore, the Fifth Circuit does not apply the heightened but-for standard to hostile work environment claims. *Barnes v. McHugh*, 2013 U.S. Dist. LEXIS 97000,2013 WL 3561679 (E.D. La. July 11, 2013).

### 1. Dahn was over the age of 40

Plaintiff Dahn is an individual who was sixty-three (63) years old and who was perceived by Defendant as being unable to perform his duties because of his age.

### 2. Dahn was subjected to harassment, either through words or actions, based on age

Plaintiff Dahn testified and the other testimony of Stevenson, Sloan, and Campbell supported that Dahn was subjected by Lt. Milsap and/or Warden Janicek to one or all of the following harassing words or actions:

1.  Being forced to work off-the-clock;
2.  Having his time records altered to reflect less overtime;
3.  Calling Dahn names including: (1) old fart; (2) old man; (3) pops; (4) old bastard; and (4) Lt. Dan (referring to the crippled, old war veteran without feeling below

his waist in the movie Forrest Gump) *in front of other employees, deputies, inmates and detainees*;

4. Being denied overtime shifts in favor of younger than 40 employees, after February 2011;
5. Being on-call more than younger than 40 employees, so that he only had 1 to 2 days off a month;
6. Being denied a promotion to Field Training Officer in favor of a younger than 40 employee;
7. Forcing him to work overtime on hospital shifts off the clock;
8. Forcing him to work a 26 hour shift at the hospital in 2011;
9. Refusing to pay him when he was on-call;
10. Terminating him.

### 3. The nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment

To be actionable, the work environment must be both objectively and subjectively offensive, i.e., an environment that a reasonable person would find hostile or abusive, and one that the victim, in fact, perceived to be so. *Id.* In the case of *City of Houston v. Fletcher*, 166 S.W.3d 479, 489, 491 (Tex. App.—Eastland 2005, pet. denied) the court held that the age-based hostile work environment was shown by evidence that employee's supervisor repeatedly called her "incompetent," "stupid old woman," and "senile," and that employee became depressed, ill, and subsequently received unacceptable performance reviews.

Here, a reasonable jury could find that the nature of the harassment created an objectively intimidating, hostile or offensive work environment for several reasons. First, Lt. Milsap and Warden Janicek continuously called Plaintiff Dahn the derogatory age related names listed above, throughout his employment and in the presence of other correctional officers and more important, in the presence of other inmates and detainees. As both Plaintiff Dahn and Warden Janicek testified, calling your officers derogatory names such as "old man" "pops" "old fart" "old bastard" and "Lt. Dan" in front of inmates and detainees is dangerous and puts that officer (Plaintiff Dahn here) in danger because the inmates will no longer respect him or listen to him.

*Plaintiffs' Brief in Opposition*                    **11**

Second being forced to be on-call more than younger employees so that you only have 1 to 2 days a month off and being forced to work 26 hour shifts at the hospital creates a hostile and intimidating work environment because Dahn was always exhausted and stressed to the extent that it affected his health. Third, being denied coveted overtime shifts and promotions also creates an objectively hostile and offensive work environment because if detrimentally affected his pay, reputation, and sense of self worth, since he was more experienced and qualified that those younger employees being awarded the shifts and promotions.  These are just a few examples of the manner in which the conduct was objectively severe, pervasive and hostile.

**4.  There exists some basis for liability on the part of the employer.**

An employee need only satisfy the first three elements if the employee alleges that a supervisor with immediate (or successively higher) authority over the employee committed the harassment. *City of Houston v. Fletcher*, 166 S.W.3d 479, 489, 491 (Tex. App.—Eastland 2005, pet. denied). Here, Lt. Milsap and/or Warden Janicek were employees of Defendant and were Plaintiff Dahn's supervisors and were directly responsible for the conduct and actions and thus Defendant is liable.  Additionally, Plaintiff Dahn complained to Major Kelsey about the harassment but again Plaintiff Dahn was ignored by Defendant.

C.      **RETALIATION UNDER TITLE VII** *(By Plaintiff Chris Stevenson only)*

Generally, to prevail on a retaliation claim, an employee must make a prima facie showing that: 1) he engaged in a protected activity under the FLSA; 2) he was subjected to an adverse employment action; and 3) there was a causal link between his protected activity and the adverse action. *Hagan v. Echostar Satellite*, LLC, 529 F.3d 617, 624 (5th Cir. 2008). Although the traditional McDonnell Douglas burden shifting analysis applies, the ultimate question is whether the employer terminated the employee because of protected activity. *Hagan*, 529 F.3d at

624. More specifically, where, as here, there has been a trial on the merits, a review of the sufficiency of the evidence focuses on the ultimate question of retaliation rather than on the elements of the prima facie case. *Thomas*, 220 F.3d at 393-394. Thus, the relevant question is whether Stevenson produced sufficient evidence for a reasonable juror to conclude that he was subjected to adverse employment actions because he engaged in protected activity. *Thomas*, 220 F.3d at 393-394. As set forth below, the evidence and the reasonable inferences drawn from such evidence, clearly demonstrate that Stevenson has met this burden.

To assert a claim of retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., a plaintiff with only circumstantial evidence must satisfy the burden-shifting McDonnell Douglas.

1. **First the plaintiff must make a prima facie case that meets three elements**:

**a. the employee engaged in an activity that is protected by Title VII**

The statute defines protected activity as opposition to any practice rendered unlawful by Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., including making a charge, testifying, assisting, or participating in any investigation, proceeding or hearing under Title VII. 42 U.S.C.S. § 2000e-3(a).

Plaintiff Stevenson reported that Lt. Milsap was sexually harassing his co-worker, Laura Standafor, and Stevenson reported the complaint to Corporal Sheila O'Dell, Lt. Tim Jones, and Warden Janicek.

**b. the employer took an adverse employment action against the employee**

The anti-retaliation provisions of the Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., prohibit more conduct than its anti-discrimination provisions. Expressly limiting its holding to retaliation claims, the U.S. Supreme Court abrogated the

*Plaintiffs' Brief in Opposition* 13

ultimate employment decision test and held that employees must show that a reasonable employee would have found the challenged action materially adverse.

Here, a reasonable jury could find that based on the testimony and evidence, Plaintiff Chris Stevenson was subjected to one of the following adverse actions listed below:

1.    Being forced to work off-the-clock;
2.    Having his time records altered to reflect less overtime;
3.    Taking him off of ICE duties causing a reduction in pay on or about October 2010;
4.    Taking him off ICE duties again causing a reduction in pay on or about February 2011;
5.    Being denied overtime shifts after February 2011;
6.    Being on-call more so that he only had 1 to 2 days off a month;
7.    Investigating him for fabricated reasons in April 2011, only 2.5 months after reporting the sexual harassment of Standafor;
8.    Reprimanding him in writing on June 9, 2011;
9.    Reprimanding him in writing on October 12, 2011;
10.   Forcing him to be partnered with Wilkerson in approximately March 2012, even though Wilkerson had in the months prior left her unsecured, loaded firearm in a public hospital bathroom;
11.   Refusing to allow him to change partners in April 2012 after he requested not to be partnered with Wilkerson;
12.   Terminating him for an event that happened in May 2012 because he was partnered with Wilkerson.

### c. there is a causal connection between the protected activity and the adverse employment action.

To establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity. The anti-retaliation provision of Title VII does not protect an employee from all retaliation, but only from retaliation that produces an injury or harm. *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 844,2010 U.S. Dist. LEXIS 2832, 1 (S.D. Tex.2010).

Here, the time nexus between Plaintiff Stevenson's participation in a protected activity (reporting that Lt. Milsap was sexually harassing Laura Standafor) and the adverse employment actions establish the causal connection easily.

(i)      January 3, 2011, Stevenson informs supervisor O'Dell that Laura Standafor complained that Milsap was sexually harassing her.

(ii)     January 4, 2011, Stevenson informs Lt. Jones about the sexual harassment - Then sees Standafor leaving Milsap's office crying.

(iii)    End of January 2011, Stevenson complains to Warden Janicek that Milsap was sexually harassing Standafor.

(iv)     February 2011, Milsap took Stevenson off all ICE duties

(v)      February 2011, Milsap asked Sloan to ticket Stevenson's car.

(vi)     Starting February 2011, Milsap placed Stevenson on-call more and denied overtime consistently.

(vii)    April 14, 2011, Warden Janicek started official investigation of Stevenson for harassment.

(viii)   May 2011, Stevenson asked Warden Janicek about investigation into him - Warden replied that Chris Bell was handling

(ix)     June 2011, Stevenson asked Chris Bell, about the investigation. Bell told Stevenson not to produce documents because he did not want the EEOC involved.

(x)      June 9, 2011, Reprimand.

(xi)     October 12, 2011, Reprimand.

(xii)    End of 2011, Wilkerson leaves her unsecured, loaded firearm in a public hospital bathroom.

(xiii)   End of March 2012, Milsap told Stevenson he could have his ICE duties back but ONLY if Wilkerson was his partner and he understood that Wilkerson was his superior.

(xiv)    On April 18, Wilkerson took the wrong detainee from jail.

(xv)     On April 19, Stevenson complained to Milsap that Wilkerson was incompetent with suicidal thoughts often.

(xvi)    Stevenson requested Milsap to partner him with someone else.

(xvii)   Milsap refused to grant transfer of partners.

(xviii)  On May 10, 2012, only approximately 1.5 month after being put back on ICE transport and duties, Wilkerson confused another detainee and he escaped.

(xix)    Terminated on May 14, 2012.


### 2.      Legitimate nondiscriminatory business reason

If a plaintiff succeeds in making a prima facie case of retaliation, a presumption of discrimination arises, and the burden shifts to the defendant employer, to provide a legitimate, nonretaliatory reason for the adverse employment action.  Arguable, a reasonable jury could find that Defendant had articulated a legitimate non-discriminatory reason for its actions.

*Plaintiffs' Brief in Opposition*                              **15**

### 3.    Pretext

If the employer succeeds, under the McDonnell Douglas framework the presumption of discrimination falls away and the plaintiff must show that the employer's articulated reason for its action is merely a pretext for retaliation, or if true, is only one reason for its conduct and another motivating factor is plaintiff's protected characteristic. The plaintiff can show pretext by showing that the employer's proffered explanation is false or unworthy of credence. A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 844,2010 U.S. Dist. LEXIS 2832, 1(S.D. Tex.2010).

Again, the same timeline that establishes causation above, also establishes a very tight time nexus between each of Plaintiff Stevenson's engaging in a protected activity of reporting sexual harassment and Defendant's subsequent and immediate adverse actions.  This clearly establishes that any legitimate nondiscriminatory reason for Defendant's adverse actions, and/or each of them, were a pretext for discrimination.

(i)    January 3, 2011, Stevenson informs supervisor O'Dell that Laura Standafor complained that Milsap was sexually harassing her.

(ii)    January 4, 2011, Stevenson informs Lt. Jones about the sexual harassment - Then sees Standafor leaving Milsap's office crying.

(iii)    End of January 2011, Stevenson complains to Warden Janicek that Milsap was sexually harassing Standafor.

(iv)    February 2011, Milsap took Stevenson off all ICE duties

(v)    February 2011, Milsap asked Sloan to ticket Stevenson's car.

(vi)    Starting February 2011, Milsap placed Stevenson on-call more and denied overtime consistently.

(vii)    April 14, 2011, Warden Janicek started official investigation of Stevenson for harassment.

(viii)    May 2011, Stevenson asked Warden Janicek about investigation into him - Warden replied that Chris Bell was handling

(ix)    June 2011, Stevenson asked Chris Bell, about the investigation. Bell told Stevenson not to produce documents because he did not want the EEOC

involved.

(x)     June 9, 2011, Reprimand.

(xi)    October 12, 2011, Reprimand.

(xii)   End of 2011, Wilkerson leaves her unsecured, loaded firearm in a public hospital bathroom.

(xiii)  End of March 2012, Milsap told Stevenson he could have his ICE duties back but ONLY if Wilkerson was his partner and he understood that Wilkerson was his superior.

(xiv)   On April 18, Wilkerson took the wrong detainee from jail.

(xv)    On April 19, Stevenson complained to Milsap that Wilkerson was incompetent with suicidal thoughts often.

(xvi)   Stevenson requested Milsap to partner him with someone else.

(xvii)  Milsap refused to grant transfer of partners.

(xviii) On May 10, 2012, only approximately 1.5 month after being put back on ICE transport and duties, Wilkerson confused another detainee and he escaped.

(xix)   Terminated on May 14, 2012.

Simply put, there is sufficient evidence in the record to support Stevenson's claims.

## VI.   EXHAUSTION OF ADMINISTRATIVE REMEDIES AND STATUTE OF LIMITATIONS ISSUES

### A.   Plaintiff Stevenson Exhausted his Administrative Remedies For his Title VII Retaliation Claims

Defendant's corollary argument that the Plaintiff Stevenson failed to exhaust his administrative remedies with respect to his Title VII retaliation claims is equally flawed. According to Defendant, Plaintiff Stevenson failed to exhaust administrative remedies because Plaintiff Stevenson's EEOC charges alleges or provides factual support for "retaliation based on reporting sexual harassment." See Defendant's Motion, at 13.  Again, Defendant is attempting to get the court to re-litigate this issue.  In the essence of judicial economy and efficiency, Plaintiff Stevenson incorporates by reference herein Defendant's Motion to Dismiss (Documents 15), Plaintiffs' Opposition to the Motion to Dismiss (Document 20) and the Court's Order on the Motion to Dismiss (Document 23), wherein the Court denied Defendant's Motion to Dismiss to *all* causes of action *except* Plaintiffs' gender discrimination claims and Plaintiff Marion Dahn's

*Plaintiffs' Brief in Opposition*                    17

Retaliation claim.  The Court rightfully held in its Order that Plaintiff Steven's EEOC charge did in fact put Defendant on notice of his retaliation claim based on a protected activity; thus, Plaintiff Stevenson has exhausted his administrative remedy as to his Retaliation in violation of Title VII claim.  (Document 23, at 5).

The United States District Court for the Northern District of Texas, Dallas Division, holds that, when determining whether a claim has been exhausted, the decision is to be based on the four corners of the EEOC charge, but the court may also consult related documents, such as a plaintiff's affidavit, his response to the EEOC questionnaire, and attachments to the response, when (1) the facts set out in the document are a reasonable consequence of a claim set forth in the EEOC charge, and (2) the employer had actual knowledge of the contents of the document during the course of the EEOC investigation. This test is subject, of course, to the established principles that the plaintiff's lawsuit may encompass any kind of discrimination like or related to the allegations contained in the EEOC charge, and that the court must not strictly construe the charge and require the complainant to allege every instance of discrimination.  *Hayes v. MBNA Tech., Inc.*, 2004 U.S. Dist. LEXIS 10628, 21-22 (N.D. Tex. June 9, 2004).

Plaintiff Stevenson's November 30, 2012 EEOC charge, is entitled "FIRST AMENDED. ORIGINAL RECEIVED 11-06-12."  (Document 20 at Exhibit "A"). Plaintiff Stevenson had difficulty in getting the EEOC investigator to actually reflect what he was claiming in the Charge of Discrimination.  Thus he amended it with the help of the EEOC investigator to reflect that he was claiming "Retaliation" in violation of Title VII before he signed and verified it and approved it to be filed with the EEOC.  Because Plaintiff Stevenson's Retaliation in violation of Title VII based on reporting sexual harassment claim is within the scope of his EEOC Charge and Plaintiff Stevenson informed both the EEOC Investigator and Defendant (Trial Exhibits 3, 7, and 10) of

his retaliation claim, he has not failed to exhaust his administrative remedies, and the Court has subject matter jurisdiction.

**B.      Plaintiff Dahn's EEOC Charges Were Timely Filed**

The analogous 1992 Texas Court of Appeals case *Brammer v. Martinaire, Inc.*, 838 S.W.2d 844, 846-47 (Tex. App.--Amarillo 1992, no writ) supports Plaintiff Dahn's arguments that his EEOC charge was filed timely. In that case, the alleged discrimination took place on January 12, 1989, and the plaintiff filed an ***unverified questionnaire*** with the TCHR on April 24, 1989, followed by a verified complaint on September 1, 1989. *See id*. at 845. Relying on §327.1(g) of the Texas Administrative Code, which allows complaints filed with the TCHR to be amended to cure technical defects or omissions, **the court held that the filing of the unverified questionnaire within 180 days of the alleged violation satisfied the statute because the subsequent verified complaint related back to the date of the unverified questionnaire, curing any earlier technical defects**. *See id.* at 845-47.

Here, by Plaintiff Dahn's own testimony and the evidence presented at trial, it is clear that Plaintiff Dahn contacted and filed his **unverified questionnaire** with the EEOC on April 27, 2012 (Exhibit 22), which was only 23 days after he was terminated from Defendant's employment. (Exhibits 17, 18, and 22).

If a complainant completes an intake questionnaire within the statutory time frame and expresses a desire to pursue his or her case, then a questionnaire is sufficient to meet the statutory requirements of a charge. The minimum threshold requirement for a charge is a "written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." The charge can be later amended to cure any discrepancies. Amendments, including verification, can be made outside of the time limit for filing the

*Plaintiffs' Brief in Opposition*                                        **19**

complaint and relate back to the date the intake questionnaire was received. *Hennigan v. I.P. Petroleum Co.*, 858 S.W.2d 371, 373 (Tex. 1993); *Pasley v. City of Dallas*, 2004 U.S. Dist. LEXIS 10998 (N.D. Tex. June 1, 2004) (holding that when a plaintiff files an unverified charge with the EEOC, later verification of the charge relates back to the date of the original charge, even if the verification occurs outside the 300 day period).

### C.   Plaintiff Dahn Also Exhausted his Administrative Remedies For his ADEA Claims Under the Continuing Violations Doctrine:

By documentation produced by Defendants, Plaintiff Marion Dahn first contacted and filed an initial complaint with the EEOC on May 1, 2012 (Exhibit 22). Dahn was terminated on April 4, 2012, and Stevenson was terminated on May 14, 2012. A plaintiff must file an Equal Employment Opportunity Commission charge of discrimination within 300 days of the adverse employment action. Clearly Plaintiffs both filed the claims with the EEOC within the 300 days, and for any conduct outside of the 300 days, it is obviously covered by the continuing violation doctrine. Throughout Plaintiff Dahn's complaints to the EEOC, he has alleged and established that "there has been a pattern or policy of discrimination." 42 U.S.C.S. § 2000e-5(e)(1) (2000); *EEOC v. Houston Area Sheet Metal Joint Apprenticeship Comm.*, 2002 U.S. Dist. LEXIS 10393 (S.D. Tex. May 31, 2002).

A hostile work environment claim is a continuing violation. *City of El Paso v. Marquez*, 380 S.W.3d 335, 343 (Tex. App.—El Paso 2012, no pet.). In *AMTRAK v. Morgan*, 536 U.S. 101 (2002), the Supreme Court held that it was appropriate to consider behavior alleged outside of the statutory time period in assessing liability, as long as any act contributing to that hostile environment occurred within the statutory time period. Noting that hostile environment claims by their very nature involve repeat conduct, the Court held that, as long as at least one act of the

same alleged unlawful employment practice falls within the statutory filing period, then the plaintiff may seek recovery for all such acts. *Id*. at 122.

Plaintiff Marion Dahn first contacted and filed an initial complaint with the EEOC on May 1, 2012 (Exhibit 22). Dahn was terminated on April 4, 2012.  Here, Plaintiff Dahn has established that an act of physical and/or verbal abuse contributing to the Plaintiff Dahn's hostile work environment occurred within 300 days of his EEOC Charge and within two years before his suit was filed. Therefore, this Court may consider all other hostile acts, even if they fall outside of the 300 day/two year time period.

### III.  TITLE VII & ADEA DAMAGES AND ATTORNEY'S FEES WERE RIGHTFULLY AND REASONABLY AWARDED BY THE JURY

A prevailing plaintiff may recover back pay, an order for reinstatement or hiring, compensatory damages, exemplary damages, attorney's fees and costs, as well as injunctive and other relief.  42 U.S.C. §§ 1981a, 2000e-5(g). Compensatory damages may be awarded for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. 42 U.S.C. § 1981a(b); *Kolstad v. American Dental Association*, 527 U.S. 526, 532–539 (1999).  Further, this discrimination was willful. Plaintiffs are therefore also entitled to recover liquidated damages. Plaintiffs are also entitled to recover all costs of court and attorneys' fees.

In the case of attorney's fees, the Supreme Court has explained that equitable considerations favor granting fees to a prevailing plaintiff.  *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418–422 (1978). A plaintiff may be awarded costs and attorney's fees under 42 U.S.C. § 2000e-5(g)(2)(B)(i) against a defendant that is found to have had a "mixed motive" even if the defendant demonstrates that it would have taken the same action in the absence of the impermissible motivating factor. This provision does not apply, however, to a

*Plaintiffs' Brief in Opposition*                    **21**

mixed-motive retaliation claim. *Carter v. Luminant Power Services Co.*, 714 F.3d 268, 270–273 (5th Cir. [Tex.] 2013); *see* § 203A.08[2][c].

## VII. CONCLUSION

Given the absence of *any* evidence to explain Milsap's animus, bias, conduct and actions toward Plaintiffs Dahn and Stevenson, the jury reasonably resolved the factual dispute in Plaintiffs' favor. At a minimum, Plaintiff Dahn produced sufficient evidence for a reasonable jury to conclude that he subjected to a hostile work environment under the ADEA; at a minimum Plaintiff Stevenson produced sufficient evidence for a reasonable jury to conclude that he was subjected to one or numerous adverse employment actions because he engaged in protected activity. The damages awarded by the jury fairly and reasonably compensate Plaintiffs for their damages.

Dated: November 13, 2014                    Respectfully submitted,

/s/ Andrea S. Loveless\
Andrea S. Loveless\
Texas State Bar No. 24041889\
1301 Ballinger Street\
Fort Worth, TX 76102\
(949) 679-4690\
Fax (949) 666-7424\
andrea@lovelesslawfirm.com

**ATTORNEYS FOR PLAINTIFFS**

*Plaintiffs' Brief in Opposition*                    22

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on all counsel for Defendant via electronic mail and U.S. Mail on November 13, 2014.

Angella H. Myers
The Myers Law Group LLP
8144 Walnut Hill Lane, Suite 390
Dallas, TX 75231
Fax: 972/781-2401
amyers@myerslawllp.com

/s/ Andrea S. Loveless

*Plaintiffs' Brief in Opposition*                    **23**